OPINION *Page 2 
{¶ 1} Appellant, Kristopher F., a minor, appeals from the October 18, 2006, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, finding him to be a delinquent child.
 STATEMENT OF FACTS AND LAW {¶ 2} On May 28, 2006, appellant was charged in the Stark County Court of Common Pleas, Juvenile Division, with being delinquent by virtue of having committed the offenses of Aggravated Burglary in violation of R.C. 2911.11, a first degree felony, and Felonious Assault in violation of R.C. 2903.11(A)(1), a second degree felony.
 {¶ 3} On May 30, 2006, prior to appellant's initial appearance, the State moved, pursuant to R.C. 2152.10 and 2152.12, to transfer jurisdiction of the criminal prosecution to the General Division of the Stark County Common Pleas Court. In support, the State argued that appellant was not amenable to the care or rehabilitation services of the juvenile system. Appellant was appointed counsel, remanded to the juvenile attention center, and a probable cause hearing was scheduled for June 12, 2006.
 {¶ 4} On June 13, 2006, after a hearing, the trial court found probable cause to believe that appellant committed the offenses of aggravated burglary and felonious assault. The trial court further found that appellant was sixteen years of age at the time of the offenses and that the offenses occurred in Stark County, Ohio. An amenability hearing was scheduled for July 31, 2006. *Page 3 
 {¶ 5} On July 31, 2006, at the amenability phase of the transfer hearing. the State introduced the psychological and psychiatric reports prepared by Dr. Thomas Gazely and Dr. Patricia Goetz. On August 1, 2006, by judgment entry, the trial court found appellant amenable to treatment in the juvenile justice system and accordingly denied the State's motion to transfer jurisdiction.
 {¶ 6} On August 15, 2006, appellant filed a motion for a competency evaluation. In support, appellant argued that the testimony and report of Dr. Gazely, which was introduced at the amenability phase of the transfer proceeding, suggested that appellant was not competent to stand trial. The trial court granted appellant's motion, ordered a competency evaluation, and set the matter for a competency hearing on September 11, 2006.
 {¶ 7} On September 11, 2006, the trial court conducted an evidentiary hearing on appellant's competency to stand trial. At the hearing, appellant presented the testimony and report of the court appointed psychologist, Dr. Thomas Gazely. In preparation for presentation of an independent competency opinion, Dr. Gazely considered the psychological evaluation he prepared for appellant's amenability hearing, reviewed the psychiatric evaluation prepared by Dr. Patricia Goetz, interviewed appellant's probation officer, reviewed records from the juvenile attention center and conducted a ninety minute interview with appellant.
 {¶ 8} On direct examination, appellant's counsel asked Dr. Gazely whether he had concluded in his report that appellant was not competent to stand trial. In response Dr. Gazely stated, "I did not state that the defendant was incompetent". Transcript of Competency Proceedings at page 8 (hereinafter TP at ___). Dr. Gazely *Page 4 
further testified that there are no standardized norms for the competency determinations of juveniles. As a result, competency evaluations are performed pursuant to adult standards, while taking into consideration the developmental level of the youth being evaluated. TP at 24.
 {¶ 9} Dr. Gazely testified that at the time of the competency evaluation appellant was sixteen years of age. In the prior evaluation, Dr. Gazely stated that appellant was attending eighth grade, had few behavior problems and had been given an individual education plan (IEP). He testified that appellant was cooperative and responsive during the evaluation and was able to speak in a clear and coherent manner. Dr. Gazely stated that appellant has a verbal intelligence quotient of 76, which puts him in a borderline range, well below the average for sixteen year olds. Dr. Gazely's report indicated that appellant's verbal ability level is consistent with appellant's apparent difficulties with expressive language, memory and information processing, but not consistent with a diagnosis of mental retardation.
 {¶ 10} Dr. Gazely further testified that appellant was able to verbalize that he had been charged with a serious offense which was punishable by "jail". TP at 25. He also stated that appellant was able to distinguish the charged assault offense from other less serious offenses, such as stealing. He stated that appellant understood that a trial is "where * * * the court meets and * * * listens to factual information and makes a decision about whether a person is guilty or not guilty". TP at 23. He stated that appellant was able to explain the role of evidence in a trial. He stated that appellant understood that he had an attorney who was present to advocate on his behalf. He also stated that, after being briefly educated, appellant gave an adequate understanding *Page 5 
regarding the role of the prosecuting attorney and the judge. TP at 30. He further testified that, pursuant to his conversations with appellant's probation officer and a review of attention center documents, appellant was able to recall information and follow directions.
 {¶ 11} Dr. Gazely expressed some concerns regarding appellant's functional abilities and deficits. Dr. Gazely testified that, while appellant could verbalize factual knowledge about the structure and proceeding of a trial, he was concerned that the appellant might have a limited ability to conceptualize and rationally appreciate the intricacies associated with a delinquency adjudication. He also expressed concern that appellant's inability to recall the violent events of the offense would interfere with his ability to assist in his own defense.
 {¶ 12} On September 20, 2006, the trial court filed a Judgment Entry Determining Competency. The trial court recognized that appellant had below average verbal and information processing abilities. However, the trial court stated that "[T]he psychological test results do not convince the Court by a preponderance of the evidence that he is incapable of understanding the nature and objective of the proceedings." Furthermore, the trial court held that appellant's alleged inability to recall the violent events of the offenses did not require the court to find that appellant was incapable of assisting in his own defense. The matter was then scheduled for trial on October 5, 2006.
 {¶ 13} On September 28, 2006, appellant filed a motion for a physical examination. Specifically, appellant set forth that Dr. Patricia Goetz had stated in a written report presented at the amenability phase, that appellant "may be in the early *Page 6 
stages of a major psychiatric disorder". Further, appellant argued that, Dr. Goetz recommended a sleep deprived EEG, to rule out partial complex seizures, which could result in rage attacks. Appellant argued that a physical exam would help determine if the physical attack was the result of a seizure, and, therefore, an involuntary action. On September 28, 2006, the trial court denied appellant's motion for a physical exam.
 {¶ 14} On October 5, 2006, prior to the adjudication, the state made a motion in limine to preclude the admission of any testimony by Dr. Goetz or Dr. Gazely regarding appellant's mental evaluations. The trial court granted the State's motion stating that the information was not relevant in the adjudication, but may be relevant in the event of a disposition. The matter then proceeded to trial.
 {¶ 15} The testimony presented at trial included the testimony of the responding officer Lt. Cole of the Canton Police Department, the testimony of the alleged victim S.L., the testimony of appellant's best friend J.F., and the testimony of other eyewitnesses, including K.J., S.W., and J.B. The State also admitted without objection the medical reports for S.L. from Mercy Medical Center.
 {¶ 16} During the adjudication, S.L. testified that she and appellant had been in a boyfriend-girlfriend relationship. However, at the time of the offense, on May 28, 2006, the relationship had been terminated. S.L. stated that the appellant and J.F. came to her residence at around 12:30 PM. She let appellant into the house but repeatedly told appellant that he would have to leave. She then walked out onto the porch with appellant and told him that if he didn't leave she would have to call the police. *Page 7 
 {¶ 17} Subsequently, J.B., S.W. and K.J. arrived at S.L.'s home. The four friends had previously agreed to meet at S.L.'s house and go to a movie. S.W. and K.J observed the argument upon entering the home. J.B. then escorted S.L. into the house and closed and locked the front door. Appellant immediately flew into a rage, kicked the front door, knocked over porch furniture and tried to get into the house through the basement or side door entrances. When appellant couldn't find another entrance into the home, he went back onto the front porch, punched in the front glass window and climbed through the broken glass into the house. Once inside, appellant grabbed S.L., knocked her down, pulled a kitchen knife from his pocket and began stabbing at her neck and chest. S.L. attempted to block the blows with her hands. The blade of the knife broke and appellant proceeded to stab at S.L.'s body with the handle. Appellant then threw the knife handle and began choking S.L. around the neck with his hands. S.L.'s three friends and J.F. tried to pull appellant's hands from S.L.'s neck. S.L. was crying, had difficulty breathing, and went in and out of consciousness. Eventually, appellant's grip was broken. Appellant then ran outside and slit his wrists with a piece of broken glass.
 {¶ 18} Law enforcement officers responded to the scene and made arrangements for both S.L. and appellant to be transported to a local hospital. The medical reports indicated that S.L. had a 4 centimeter laceration to her right hand which was closed with nylon sutures and suffered a soft tissue injury to her neck.
 {¶ 19} After the presentation of evidence, appellant was found to be delinquent by reason of having committed aggravated burglary and felonious assault. The trial court sentenced appellant to a one year minimum commitment to the *Page 8 
Department of Youth Services for each of the aggravated burglary and felonious assault convictions. The trial court also reviewed appellant's past delinquent history and determined that appellant had a previously suspended commitment in Stark County Common Pleas Court Juvenile Division Case Number J139207 and was on probation at the time of the offense. The trial court revoked the one year suspended commitment in Case Number J139207 and ordered all the sentences to be served consecutively for an aggregate three year minimum commitment to DYS up to the age of twenty-one years. It is from this adjudication and disposition that the appellant now seeks to appeal, setting forth the following assignments of error.
 {¶ 20} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THE JUVENILE COMPETENT TO STAND TRIAL.
 {¶ 21} "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED JUVENILE'S MOTION FOR A PHYSICAL EXAM TO DETERMINE IF JUVENILE SUFFERED FROM A SEIZURE DISORDER AND/OR BLACKOUTS AND WHEN IT GRATED [SIC] THE STATE'S MOTION IN LIMINE TO EXCLUDE THE MEDICAL DOCTOR FROM TESTIFYING AT JUVENILE'S TRIAL.
 {¶ 22} "III. THE TRIAL COURT ERRED BY FINDING JUVENILE DELINQUENT OF FELONIOUS ASSAULT BY FINDING THAT JUVENILE ASSAULTED THE VICTIM WITH A DEADLY WEAPON WHEN JUVENILE WAS CHARGED WITH FELONIOUS ASSAULT FOR KNOWINGLY CAUSING SERIOUS PHYSICAL HARM TO ANOTHER." *Page 9 
 I {¶ 23} Appellant argues in his first assignment of error that the trial court abused its discretion when it determined that he was competent to stand trial. We disagree.
 {¶ 24} The conviction of an accused not legally competent to stand trial is a violation of due process. State v Berry, 72 Ohio St. 3d 354,650 N.E.2d 433, 1995-Ohio-310. Ohio Juv. R. 32(A)(4) provides that a court may order a mental or physical examination where a party's competence to participate in the proceedings is at issue. However, there is no statutory basis for a juvenile to plead that he is incompetent to stand trial. Nevertheless, certain constitutional requirements associated with an adult criminal trial are equally applicable to adjudicative juvenile proceedings. McKeiver v. Pennsylvania (1971),403 U.S. 528, 533, 91 S.Ct. 1976, 1980, 291 L.Ed.2d 647. Therefore, the courts have held that the standards applied to determine the competency of adults in R.C. 2945.37 govern the competency evaluations of juveniles, as long as the standards are applied in light of juvenile, rather than adult norms. In re McWhorter (Dec. 5, 1994), Butler App. No.CA94-02-047.
 {¶ 25} Pursuant to R.C. 2945.37(G), a "defendant is presumed competent to stand trial unless it is proved by a preponderance of the evidence in a hearing under this section that because of his present mental condition he is incapable of understanding the nature and objective of the proceedings against him or presently assisting in his defense." InDusky v. U.S. (1960), 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824, the Supreme Court stated that the test for competency is whether the defendant has a sufficient present ability to consult with his lawyer with a reasonable degree of *Page 10 
rational understanding and whether he has a rational as well as factual understanding of proceeding against him." See also, In re Anderson, Tuscarawas App. No. 2001AP030021, 2002-Ohio-776, appeal not allowed,95 Ohio St.3d 1474, 2002-Ohio-2444, 768 N.E.2d 1182.
 {¶ 26} In performing competency evaluations, the courts have recognized that there are practical differences between juvenile delinquency proceedings and adult criminal prosecutions. As a result, these differences have been taken into consideration by the juvenile court in determining whether an alleged juvenile delinquent is capable of understanding the nature and objective of the proceedings and in assisting in his or her own defense. In re McWhorter, Supra.
 {¶ 27} Factors which have been considered in juvenile competency evaluations include, appellant's age and cognitive and intellectual development, appellant's problems with receptive or expressive language, the ability to understand and communicate during competency testing, the complexity of the case and the attorney's ability to simplify and explain complex issues, the seriousness of the charges in relation to the stress they could cause appellant during trial, any mental condition that would adversely affect appellant's ability to understand the proceedings or work with counsel, appellant's ability to understand the nature of the charges and the potential penalties, appellant's ability to provide an adequate definition of the judge, defense attorney and prosecutor. In re McWhorter, Supra. Furthermore, a separate and important consideration is the manner in which the system affords the juvenile additional protections such as having a parent, guardian, or other person present with the child during the proceedings. In reStone, Clinton App. No. CA2002-09-035, 2003-Ohio-3071. *Page 11 
These factors provide a gauge to evaluate a juvenile's competency to stand trial and take into consideration the best interest of the child. A below average verbal IQ alone does not in and of itself, indicate that a defendant is not competent to stand trial. In re McWhorter, Supra.
 {¶ 28} When reaching a competency determination, the adequacy of the data relied upon by the expert who examined the defendant is a question for the trial court as the trier of fact. State v Williams (1986),23 Ohio St. 3d 16, 19, 490 N.E. 2d 906. An appellate court will not disturb a competency determination if there was "some reliable credible evidence supporting the trial court's conclusion that [the defendant] understood the nature and objective of the proceeding against him." State v.Williams, supra.
 {¶ 29} In this case, appellant argues that Dr. Gazely's testimony and report do not support a finding of competency. We disagree.
 {¶ 30} On direct examination, Dr. Gazely specifically stated that he did not find appellant incompetent to stand trial. Admittedly, Dr. Gazely's testimony was mixed, and presented both the positive and negative aspects of appellant's intellectual and verbal limitations. Furthermore, Dr. Gazely explained to the trial court that these limitations could impact appellant's ability to understand the nature of the proceedings and participate in his own defense. However, Dr. Gazely also stated that appellant understood that he was accused of a serious offense. Dr. Gazely stated that appellant understood that evidence would be presented and considered by the judge and that if he was found guilty he could suffer serious consequences including incarceration. Dr. Gazely stated that, although appellant has limited expressive language abilities, *Page 12 
appellant was able to receive information and recall simple explanations regarding the role of key courtroom personnel including the judge, his attorney and the prosecutor. Dr. Gazely stated that appellant actively participated in the evaluation and provided coherent responses. Furthermore, Dr. Gazely stated that appellant understood his attorney's role as an advocate on his behalf. Therefore, we find that there was reliable, credible evidence in Dr. Gazely's testimony to support the trial court's finding that the appellant was competent to stand trial.
 {¶ 31} Additionally, the trial court properly evaluated appellant's competency to stand trial by juvenile norms. The trial court took into consideration the juvenile's behavior, the inherent protections in a juvenile proceeding and the nature of the offense. Specifically, the charges of aggravated burglary and felonious assault were not complex offenses and appellant understood them to be serious. The trial court also recognized that appellant had a prior delinquency history with the juvenile court. Additionally, appellant had actively participated in probation as a result of a prior delinquency adjudication and was able to follow directions during probation.
 {¶ 32} Finally, the trial court indicated that, unlike adult criminal proceedings, there were additional protections present in appellant's juvenile proceeding. These included a court appointed counsel who was familiar and experienced in juvenile delinquency proceedings and was available to assist and explain the process. Additionally, appellant's custodian was available to assist with explanations and important decisions.
 {¶ 33} We find that the trial court properly evaluated appellant's cognitive and intellectual development and the inherent protective nature of the juvenile *Page 13 
proceeding. We further find that the trial court's conclusion was supported by reliable and credible evidence that appellant, with his limited abilities, could understand the nature of the proceedings, reasonably communicate with counsel, and participate in his own defense. Accordingly, we find no error in the trial court's determination that appellant was competent to stand trial.
 {¶ 34} Appellant's first assignment of error is without merit and is hereby overruled.
 II {¶ 35} In his second assignment of error appellant argues that he was denied a fair trial because the trial court did not provide him with funding to obtain an expert or permit him to present expert testimony that he had neither the actus res (voluntary action) or mens rea (culpable mental state) required for a delinquency adjudication.
 {¶ 36} Specifically, appellant argues that the trial court abused its discretion in denying appellant's motion to appoint an expert to perform a physical examination at the State's expense. Appellant also argues that the trial court abused its discretion in excluding the psychological and psychiatric testimony of Dr. Gazely and Dr. Goetz at the adjudication.
 {¶ 37} The admission or exclusion of expert testimony is within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. State v. Jones (2000), 90 Ohio St.3d 403, 414,739 N.E.2d 300. The phrase "abuse of discretion" connotes more than an error of law or judgment; it implies the trial court *Page 14 
acted unreasonably, arbitrarily, or unconscionably. State v. Adams
(1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144
 {¶ 38} Pursuant to R.C. 2901.21, a juvenile cannot be found to have committed a criminal offense unless it can be shown that liability is predicated on a voluntary act, and that the defendant had the requisite mental state to commit the act. Specifically, R.C. 2901.21 states in pertinent part as follows:
 {¶ 39} "(A) Except as provided in division (B) of this section, a person is not guilty of an offense unless both of the following apply:
 {¶ 40} (1) The person's liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing;
 {¶ 41} (2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section of the defining offense. * * *
 {¶ 42} (D) As used in this section:
 {¶ 43} * * * (2) Reflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition, are involuntary acts."
 {¶ 44} The "voluntary act" or "omission" requirement of R.C.2901.22(A)(1) codifies the maxim of criminal law that criminal conduct must rest on an act, and the law will not punish for a guilty mind alone. The same applies to an omission to act, where both a duty to act is imposed by law and a capacity to act exists. The requirement in either instance is the "actus res" necessary to constitute a violation. *Page 15 
 {¶ 45} The conduct that a prohibited act involves must be voluntary in order for criminal liability to result. A reflexive or convulsive act is not voluntary and thus cannot be the basis of criminal liability. R.C.2901.21(D)(2); State v. Grimsley (1982), 3 Ohio App.3d 265,444 N.E.2d 1071. Similarly, acts performed while unconscious or sleepwalking are not voluntary acts. "In short, any act that is not the product of the actor's conscious determination is not a voluntary act." 2 Katz 
Gianelli, Criminal Law, Baldwin's Ohio Practice, Section 85:3, at 871.
 {¶ 46} Blackouts have been deemed an affirmative defense which negate the actus res. However, the mere fact that appellant suffered from blackouts standing alone, would not be sufficient to provide a defense to the criminal charges. Appellant's condition "would have to rise to the level of unconsciousness before the blackout defense would be available." State v McCloskey, Franklin App. No. 05AP-882,2006-Ohio-6646.
 {¶ 47} When deciding whether to appoint an expert witness at the state's expense, the trial court must consider the following three factors: (1) the effect of the defendant's private interest in the accuracy of the trial if the requested service is not provided, (2) the burden on the government's interest if the service is provided, and (3) the probable value of the additional service and the risk of error in the proceeding if the assistance is not provided. State v. Mason (1998),82 Ohio St.3d 144, 149, 694 N.E.2d 932. When considering these factors, the trial court must consider the value of the expert assistance to the defendant's proper representation at either the guilt or sentencing phase and the availability of alternative devices that would fulfill the same *Page 16 
functions as the expert assistance sought. State v. Jenkins (1994),15 Ohio St.3d 164, 473 N.E.2d 264, at paragraph four of the syllabus.
 {¶ 48} To receive an expert witness at the state's expense, the defendant must demonstrate more than a mere possibility of assistance from an expert. State v. Campbell (2000), 90 Ohio St.3d 320, 328,738 N.E.2d 1178; State v. Abelt (2001), 144 Ohio App.3d 168, 174,759 N.E.2d 847. At a minimum, the indigent defendant must present the trial judge with sufficient facts which will demonstrate a particularized need for the expert requested. State v. Nields (2001), 93 Ohio St.3d 6, 12,752 N.E.2d 859; Abelt. "Undeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate." State v.Wright (Sept. 27, 2001), 7th Dist. No. 97 CO 35, unreported.
 {¶ 49} Essentially, appellant requested funding for an expert to conduct a physical examination, in order to diagnose and confirm a seizure disorder, which would cause "blackouts" or involuntary fits of rage. Appellant argued in his written motion, filed on September 28, 2006, that Dr. Patricia Goetz, "stated in her psychological report that the juvenile "may be in the early stages of a major psychiatric disorder". Further, in her conclusions, she stated that, "I would also like to have a sleep deprived EEG. His brother has a history of seizure . . . I think it would be helpful to rule out any kind of partial complex seizures which can result in rage attacks."
 {¶ 50} Dr. Goetz's evaluation results were introduced and considered at the amenability phase of the bindover hearing to assist the trial court in determining whether the juvenile was amenable to further assistance in the juvenile justice system. At no point, does Dr. Goetz state that appellant was suffering from a seizure disorder at *Page 17 
the time of the aggravated burglary and felonious assault offenses. Dr Goetz stated in her report that appellant's violent reaction occurred for the following reason: "In my opinion, his [appellant's] self worth became intertwined with dating this particular girl. When she broke up with him he became so upset and hopeless that he became violent towards her and himself. With an I.Q. in the borderline range and Attention Deficit Disorder, he will have difficulty with problem solving, impulsivity, and coming up with complex solutions. These limitations resulted in his handling a difficult situation by getting aggressive." Goetz Report at 6. Furthermore, Dr. Goetz also reported, that it was unlikely that appellant suffered from a seizure disorder since the appellant did not exhibit any of the classic symptoms of such a disorder.
 {¶ 51} Additionally, appellant's potentially self-serving assertion that he was unable to recall the violent events is insufficient to show a particularized need for a state funded expert in light of his apparently conscious acts of bringing a kitchen knife to the scene and stabbing and choking the victim. Therefore, the trial court was correct in concluding that any physical exam results, in all likelihood, would not support the argument that appellant's actions were involuntary at the time of the aggravated burglary and felonious assault offenses. For these reasons we find that appellant failed to establish a particularized need for a state funded physical exam.
 {¶ 52} Appellant also argues that the trial court abused its discretion in precluding the testimony of psychological experts Dr. Gazley and Dr. Goetz during the adjudication. It appears that appellant sought to introduce the testimony to argue that appellant lacked the mental capacity to form the specific mental intent necessary to commit the offenses. Unlike the physical examination argument of involuntariness or *Page 18 
lack of actus res, this argument focuses on appellant's ability to form a culpable mental state or mens rea. In other words, appellant argues that he suffered from a diminished mental capacity which prevented him from developing the specific intent to knowingly commit aggravated burglary and felonious assault.
 {¶ 53} The Ohio Supreme Court has held that the partial defense of diminished capacity is not recognized in Ohio. State v. Jackson (1972),32 Ohio St.2d 203, 291 N.E.2d 432, certiorari denied (1973),411 U.S. 909, 93 S.Ct. 1539, 36 L.Ed.2d 199, followed by State v. Wilcox (1982),70 Ohio St.2d 182, 436 N.E.2d 523. In, State v. Wilcox, the Ohio Supreme Court analyzed the struggle to develop a legal theory which acknowledged that criminal culpability may be affected by limited intellectual capacity and mental health illnesses. Citing, Bethea v. UnitedStates (D.C.App. 1976), 365 A.2d 64, the Court stated the potential applicability of diminished capacity as a complete defense to crimes of general intent dramatically highlights the paradox inherent in the doctrine: "The subjective (diminished capacity) theory classes as less serious the offender who is less culpable; assuming him to be less `guilty,' it proceeds to class him as less dangerous and either reduces the length of time he may be detained or releases him entirely. Yet his objective behavior may mark him as extremely dangerous and seriously in need not only of correction and treatment but of detention as well."
 {¶ 54} After much analysis the Court followed State v. Jackson and affirmed that "* * * A defendant may not offer expert psychiatric testimony, unrelated to the insanity defense, to show that the defendant lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime." State v. Wilcox at paragraphs one and two of the syllabus. For this reason the trial court did not abuse *Page 19 
its discretion in granting appellee's motion in limine to exclude testimony of Dr. Gazely and Dr. Goetz at appellant's adjudication.
 {¶ 55} For these reasons, appellant's second assignment of error is not well taken and is hereby overruled.
 III {¶ 56} Appellant argues in his third assignment of error that the trial court erred in finding him delinquent by reason of felonious assault. Specifically, appellant argues that the trial court lacked the authority to find appellant guilty of felonious assault with a deadly weapon when the complaint charged him with felonious assault for knowingly causing serious physical harm to another.
 {¶ 57} The complaint for delinquency by felonious assault filed on May 28, 2006, charged appellant with a violation of R.C. 2903.11(A)(1) stating that appellant was delinquent in that he did knowingly cause serious physical harm to another, to wit: "The juvenile did break out a window to the victim's residence, entered by force, knocked her to the floor, stabbed her with a knife, attempted to stab her again as the knife blade broke off. He then began to choke her. He was pulled from her by force by witnesses. She required hospitalization."
 {¶ 58} The judgment entry of delinquency filed by the trial court on October 25, 2006, found that appellant "did break through a closed window of the victim's home without permission with purpose to commit a felonious assault". The trial court further found that appellant did assault the victim with a deadly weapon, to wit: a steak knife, stabbing her in the hand. After the knife broke, [appellant] did choke the victim to a point where she lost consciousness." *Page 20 
 {¶ 59} Pursuant to R.C. 2901.01(A)(5), serious physical harm to a person is defined as any of the following:
 {¶ 60} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 61} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 62} "(c) Any physical harm that involves some permanent incapacity; whether partial or total, or that invokes some temporary, substantial incapacity;
 {¶ 63} "(d) Any physical harm that involves some permanent disfigurement or invokes some temporary serious disfigurement;
 {¶ 64} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 65} A trial court does not err in finding serious physical harm where the evidence demonstrates the victim sustained injuries necessitating medical treatment.'" State v. Scott, Cuyahoga App. No. 81235, 2003-Ohio-5374, at ¶ 7, quoting State v. Davis, Cuyahoga App. No. 81170, 2002-Ohio7068.
 {¶ 66} R.C. 2923.11(A) defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." The Committee Comment to R.C. 2923.11(A) specifically mentions a knife as a deadly weapon.
 {¶ 67} In this case the victim testified that appellant jumped through a broken glass window, threw her to the floor, stabbed at her neck and chest with a kitchen knife, and stabbed the knife into her hand. She further stated that after the *Page 21 
kitchen knife broke, appellant choked her around the neck causing her to go in and out of consciousness. As a result, the victim was taken to Mercy Medical Center for evaluation, given stitches for a laceration in her hand and suffered soft tissue injuries to her neck.
 {¶ 68} Appellant in this case was notified in the original complaint that the allegations included serious physical harm caused by a deadly weapon, to wit: a knife. The language in the trial court's judgment entry states that a deadly weapon was used in the commission of the offense. However, the additional language in the judgment entry conforms to the essential facts set forth in the original complaint and demonstrates that the victim suffered injuries which included serious physical harm caused by a deadly weapon. In addition, the judgment entry states that appellant choked the victim to a point where she lost consciousness. The trial court's judgment does not change the nature or degree of the offense or the potential penalty upon a delinquency finding.
 {¶ 69} Due to the seriousness of the victim's injuries, we do not find that the trial court abused its discretion in finding appellant guilty of knowingly causing serious physical harm to the victim by means of a deadly weapon as charged in the felonious assault complaint. *Page 22 
For these reasons, Appellant's third assignment of error is without merit and is hereby overruled.
 {¶ 70} Based upon the foregoing, the decision of the trial court is affirmed.
 Edwards, J. Farmer, P.J. and Wise, J. concur. *Page 23 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division is affirmed. Costs assessed to appellant. *Page 1