[Cite as *State v. Goshade*, 2013-Ohio-4457.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120586 |
| | | TRIAL NO. B-1107510 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| THOMAS GOSHADE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 9, 2013

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond L. Katz*, for Defendant-Appellant.

Please note: this case has been removed from the accelerated calendar.

**DINKELACKER, Judge.**

{¶1} Defendant-appellant Thomas Goshade was convicted of one count of domestic violence under R.C. 2919.25(A) and one count of felonious assault under R.C. 2903.11(A)(2). He was sentenced to 18 months' imprisonment on the domestic-violence count and four years' imprisonment on the felonious-assault count, to be served concurrently. Goshade now appeals those convictions. We find no merit in his four assignments of error, and we affirm the trial court's judgment.

## I. Facts and Procedure

{¶2} The record shows that at approximately 5:11 a.m. on November 11, 2011, Officer Martin Strong of the Forest Park Police Department responded to a 911 call placed by Ticora Edmonson. He met Emondson at the door of her home, crying and upset. She had a red, swollen right check and a red mark around her neck. The officer observed "a cord to an electrical device lying in the hallway" and a broken, splintered bedroom door frame.

{¶3} Edmonson told Officer Strong that she had been arguing with Goshade, who was the father of her child, and that she had locked herself and her child in a bedroom. Goshade had kicked in the door and had started hitting her. He then picked up an electrical cord, wrapped it around her neck and tried to choke her with it. He subsequently took the cell phone on which she had made the 911 call and the keys to her car, and left the area in her vehicle.

{¶4} When Goshade took the cell phone from Edmondson, he did not end the call. Therefore, the 911 recording contained statements made by Goshade in separate conversation on his own cell phone. He stated that he had "made her feel it" and that he "took her to the brink."

{¶5}   The police were able to track Goshade using Edmonton's cell phone, and he was subsequently arrested in a store parking lot some distance away.  He admitted to Officer Strong that he had gotten into an argument with Edmonson, that he had broken down a door, that he had hit her and that he had choked her.  When Officer Strong asked Goshade if he had choked Edmonson with a cord, he said, "I tried."

{¶6}   At trial, Edmonson testified that she and Goshade had been living together and that she had called 911 because she and Goshade had been fighting.  Then, she asserted her Fifth Amendment privilege against self-incrimination.  The recording of the 911 call was admitted into evidence.  It contained Edmonson's cries for help and Goshade's conversation on his own cell phone.

## II.   Confrontation Clause

{¶7}   In his first assignment of error, Goshade contends that the trial court erred in considering inadmissible testimonial hearsay.  He argues that admission into evidence of Edmonson's statements to Officer Strong violated his right to confront the witnesses against him.  This assignment of error is not well taken.

{¶8}   Edmonson's statements were admitted under the excited-utterance exception to the hearsay rule.  Evid.R. 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  Excited utterances are reliable because they do not entail an opportunity for the declarant to reflect, thus reducing the chance to fabricate or distort the truth.  *State v. Wallace*, 37 Ohio St.3d 87, 88, 524 N.E.2d 466 (1988); *State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 20-21 (1st Dist.).  In analyzing whether a statement is an excited utterance, "[t]he controlling factor is whether

the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *Lukacs* at ¶ 21, quoting *State v. Tebelman*, 3d Dist. Putnam No. 12-09-01, 2010-Ohio-481, ¶ 29.

{¶9} Officer Strong testified that when he arrived at Edmonson's door, she was "crying, sobbing, upset," and that she had visible injuries. He stated that in his opinion she was still acting under the stress of the event that had just occurred. Thus, Edmondson was under the stress of startling events—Goshade hitting and choking her. Her statements related to those startling events, and therefore, they fell under the excited-utterance exception to the hearsay rule.

{¶10} Even though Edmondson's statements were admissible under the rules of evidence, their admission into evidence might still have violated Goshade's Sixth Amendment rights. The Sixth Amendment to the United States Constitution states, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Id.* at 53-54.

{¶11} Because Edmonson invoked her Fifth Amendment privilege against self-incrimination, she was unavailable to testify. *State v. Osman*, 4th Dist. Athens No. 09CA36, 2011-Ohio-4626, ¶ 86; *State v. Carter*, 8th Dist. Cuyahoga No. 84036, 2004-Ohio-6861, ¶ 37; *State v. Cutlip*, 9th Dist. Medina No. 03CA0118-M, 2004-Ohio-2120, ¶ 16. The mere fact that she was called to the stand and answered a few questions does not serve to safeguard Goshade's right to confrontation. *Osman* at ¶ 86. Because Edmonson was unavailable and Goshade did not have a prior

opportunity for cross-examination, the admission of her statements to Officer Strong violated his right to confrontation, unless the statements were not testimonial.

{¶12} In *Crawford*, The Supreme Court distinguished between testimonial and nontestimonial hearsay and held that only testimonial statements implicate the Confrontation Clause. *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177; *State v. Washington*, 1st Dist. Hamilton No. C-090561, 2010-Ohio-3175, ¶ 32. The court did not comprehensively define "testimonial," but stated that the core class of testimonial statements "includes statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for later use at trial." *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 13, quoting *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177; *Washington* at ¶ 32.

{¶13} In the context of excited utterances made to police officers, the United States Supreme Court has held that the key to determining whether statements are testimonial is whether the questioning by police or a police counterpart was seeking information needed to respond to a present emergency or whether it was seeking information about past events as part of the investigation of a crime. *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *Washington* at ¶ 35.

{¶14} It stated:

Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the

circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis* at 822.

{¶15} In assessing whether a statement is testimonial, the court must "objectively evaluate the circumstances in which the encounter occur[red] and the statements and actions of the parties." *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 150, quoting *Michigan v. Bryant*, ___ U.S. ___, 131 S.Ct. 1143, 1156, 179 L.Ed.2d 93 (2011). The focus is not on the subjective or actual purpose or intent of the interrogator or the declarant, but on "the purpose that reasonable participants would have had" under the same circumstances. *Id.* The focus must be on the parties at the time of the interrogation and not based on hindsight. *Bryant* at 1157, fn. 8; *Jones* at ¶ 150. Whether an emergency existed is "a highly context-dependent inquiry." *Bryant* at 1158; *Jones* at ¶ 151.

{¶16} In this case, Officer Strong responded to a 911 call with the sounds of a struggle heard in the background. When Officer Strong arrived at Edmonson's home, she met him at the door, crying and upset. She was so upset that it took some time for Strong to determine what had happened. She had red marks on her face and neck and the door was splintered, supporting her claim that a violent encounter had occurred.

{¶17} Goshade's whereabouts were unknown, unlike in cases where courts have found the victim's statements to be testimonial because the alleged perpetrator had been apprehended or secured. *See Davis*, 547 U.S. at 829-830, 126 S.Ct. 2266, 165 L.E.2d 224; *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239,

¶ 103-104. The encounter was informal, and Officer Strong was responding to an ongoing and fluid situation. *See Bryant* at 1160; *Jones* at ¶ 154; *State v. Diggle*, 3d Dist. Auglaize No. 2-11-19, 2012-Ohio-1583, ¶ 31. He was not seeking to develop testimony about past events for a criminal proceeding. *See Fry* at ¶ 103-104. Edmonson's primary purpose was to receive assistance from the officer because Goshade was at large and had taken her cell phone. *See State v. King*, 2d Dist. Montgomery No. 25151, 2013-Ohio-1694, ¶ 15; *State v. McDaniel*, 2d Dist. Montgomery No. 24423, 2011-Ohio-6326, ¶ 25-27.

{¶18} Considering the totality of the circumstances, we hold that Edmondson's statements were not testimonial. Therefore, the trial court did not err in admitting them into evidence under the excited-utterance exception to the hearsay rule. Further, even if the admission of her statements into evidence had been error, any error was harmless given that Goshade admitted to Officer Strong that he had hit and choked Edmondson. *See State v. Ricks*, ____ Ohio St.3d ____, 2013-Ohio-3712, ____ N.E.2d ____, ¶ 46; *State v. Cowins*, 1st Dist. Hamilton No. C-120191, 2013-Ohio-277, ¶ 9. Consequently, we overrule Goshade's first assignment of error.

### III. Manifest Weight of the Evidence

{¶19} In his second assignment of error, Goshade contends that his convictions were against the manifest weight of the evidence. After reviewing the record, we cannot say that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Goshade's convictions and order a new trial. Therefore, the convictions were not against the manifest weight of the evidence, and we overrule Goshade's second assignment of error. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Erkins*, 1st Dist. Hamilton No. C-110675, 2012-Ohio-5372, ¶ 72.

7

### IV. Allied Offenses of Similar Import

{¶20} In his third assignment of error, Goshade contends that the trial court erred by imposing multiple sentences for crimes that were allied offenses of similar import under R.C. 2941.25. He argues that both offenses of which he was convicted involved the same conduct with the same animus. Therefore, they should have been merged for sentencing. This assignment of error is not well taken.

{¶21} We first note that Goshade failed to raise the issue in the trial court. Consequently, he has waived all but plain error by failing to raise any objection to the imposition of multiple punishments at the sentencing. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31; *State v. Anderson*, 1st Dist. Hamilton No. C-110029, 2012-Ohio-3347, ¶ 14. Nevertheless, the Ohio Supreme Court has held that imposition of multiple sentences for allied offenses of similar import is plain error. *Underwood* at ¶ 31.

{¶22} Under R.C. 2941.25, a trial court may, in a single proceeding, sentence a defendant for two or more offenses having as their genesis the same criminal conduct Or transaction, if the offenses (1) were not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense. *Anderson* at ¶ 15, citing *State v. Bickerstaff*, 10 Ohio St.3d 62, 65-66, 461 N.E.2d 892 (1984). Unless committed separately or with a separate animus, allied offenses must be merged for purposes of sentencing following the state's election of which offense should survive. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraphs one and two of the syllabus; *Anderson* at ¶ 15. A criminal defendant bears the burden to show that he or she is entitled to merger of offenses under the allied-offenses statute. *State v. Whipple*, 1st Dist. Hamilton No. C-110184, 2012-Ohio-2938, ¶ 36.

{¶23} The imposition of concurrent sentences is not the equivalent of merging allied offenses. *State v. Damron*, 129 Ohio St.3d 86, 2011-Ohio-2268, 950 N.E.2d 512, ¶ 17. Even when the sentences are to be served concurrently, a defendant is prejudiced by having more convictions than are authorized by law. *Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, at ¶ 31.

{¶24} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court changed the analysis that courts are to apply in allied-offenses cases. *State v. Lanier*, 192 Ohio App.3d 762, 2011-Ohio-898, 950 N.E.2d 600, ¶ 9 (1st Dist.). It stated that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Johnson* at syllabus.

{¶25} In applying R.C. 2941.25, we consider the statutory elements of each offense in the context of the defendant's conduct. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 20; *State v. Hodges*, 1st Dist. Hamilton No. C-110630, 2013-Ohio-1195, ¶ 7. Goshade was convicted of felonious assault under R.C. 2903.11(A)(2). It provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means 0f a deadly weapon." He was also convicted of domestic violence under R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Because Goshade was charged with domestic violence and felonious assault under R.C. 2903.11(A)(2), which requires of the use of a deadly weapon, this case presents a different situation than cases where the offender is charged with domestic violence and felonious assault under R.C. 2911.(A)(1), which requires serious physical harm. *See State v. Carner*, 8th Dist. Cuyahoga No. 96766,

2012-Ohio-1190, ¶ 43-44; *State v. Weathers*, 12th Dist. Butler No. CA2011-01-013, 2011-Ohio-6793, ¶ 18-19.

{¶26} Although felonious assault under R.C. 2903.11(A)(2) and domestic violence can be committed by the same conduct, in this case they were not. The domestic-violence conviction was the result of Goshade beating the victim after breaking down the bedroom door. If his conduct had ended after he had beaten the victim, he could not have been convicted of felonious assault under subsection (A)(2) because he did not use a deadly weapon. The felonious-assault conviction was based upon him choking the victim with the electrical cord, which became a deadly weapon when he used it as a weapon by wrapping it around her neck. *See* R.C. 2923.11(A); *In re Kristopher F.*, 5th Dist. Stark No. 2006CA00312, 2007-Ohio-3259, ¶ 68.

{¶27} Because the two offenses were not based on the same conduct, they were not allied offenses of similar import subject to merger. *See State v. Harmon*, 9th Dist. Summit No. 26502, 2013-Ohio-1769, ¶ 26-29; *State v. Patterson*, 8th Dist. No. 98127, 2012-Ohio-5511, ¶ 35. Therefore, the trial court did not err in convicting Goshade of both offenses, and we overrule his third assignment of error.

## V. Ineffective Assistance of Counsel

{¶28} In his fourth assignment of error, Goshade contends that he was denied the effective assistance of counsel. He argues that counsel was ineffective for failing to object when he was convicted of both felonious assault and domestic violence because they were allied offenses of similar import. But because we have held that the two offenses were not allied offenses subject to merger, Goshade's counsel was not ineffective for failing to raise the issue.

{¶29} Goshade has not demonstrated that his counsel's representation fell below an objective standard of reasonableness or that, but for counsel's

10

unprofessional errors, the result of the proceeding would have been otherwise. Therefore, he has failed to meet his burden to show ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687-689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. McCrary*, 1st Dist. Hamilton No. C-080860, 2009-Ohio-4390, ¶ 12-17. Consequently, we overrule Goshade's fourth assignment of error and affirm his convictions.

Judgment affirmed.

**HENDON, P.J.,** concurs.
**DEWINE, J.**, concurs in part and dissents in part.

**DEWINE, J.**, concurring in part and dissenting in part.

{¶30} I concur in the majority's opinion in regard to the Confrontation Clause and weight of the evidence issues. I must respectfully dissent as to the allied-offenses and ineffective-assistance-of-counsel issues.

{¶31} Since the Ohio Supreme Court's decision in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the test that we consistently have applied to determine if offenses are allied is this: "if the evidence adduced at trial reveals that the state relied upon the same conduct to support the two offenses, and that the offenses had been committed neither separately nor with a separate animus as to each, then the defendant is afforded the protection of R.C. 2941.25, and the trial court errs in imposing separate sentences for the offenses." *State v. Ruff*, 1st Dist. Hamilton Nos. C-120533 and C-120534, 2013-Ohio-3234, ¶ 31; *see State v. Hodges*, 1st Dist. Hamilton No. C-110630, 2013-Ohio-1195, ¶ 6; *State v. Anderson*, 2012-Ohio-3347, 974 N.E.2d 1236, ¶ 20 (1st Dist.).

{¶32} In this case, I agree with the majority that the allied-offenses issue turns on whether the charges for domestic violence and felonious assault were based

11

upon the same conduct. *See* majority opinion at ¶ 27; *see also* R.C. 2941.25; *Johnson* at syllabus. I also agree with the majority that domestic violence and felonious assault under R.C. 2903.12(A) can be committed with the same conduct. What I disagree with is the majority's conclusion that Mr. Goshade's convictions were not based on the same conduct. I just cannot reach that result from the record before us.

{¶33} Let's look at that record. Here is the totality of what the state says in the bill of particulars about the acts that constituted all counts charged in the indictment:

> On or about November 11, 2011, * * * the defendant forced his way into a locked bedroom. Once the Defendant gained access of the room the Defendant using the Defendant's hands and a computer cord choked Ticora Edmondson, the Defendant's child's mother, living as the Defendant's spouse. The Defendant threatened to kill Edmonson. The Defendant fled the scene with Edmondson's cell phone and vehicle.

The only evidence at trial about the details of the altercation was the testimony of Officer Strong. This is what Officer Strong testified the victim told him:

> I was told that she had been arguing with her child's father and she had locked herself in the bedroom with her child. This person came be [sic] known to me as Mr. Goshade, the child's father, had then knocked in the door, kicked in the door, got into the bedroom.
>
> They had got into a struggle where he slapped, struck and choked her, and she told me that he had

taken an electrical cord from an electrical device and wrapped it around her neck and attempted to choke her with that.

And this is what Officer Strong testified the defendant told him:

Q. What did he tell you happened?

A. I started the line of questioning, asked him if they had been in an argument. He indicated affirmative, that, yes, they were. I asked him if he had broken down a door. He indicated yes. I asked him if they'd gotten into a fight. Yes. I asked him had he slapped her. He said yes. Had he hit her? Yes. Had he choked her? Yes.

And the final question I had asked him, I asked if he had choked her with a cord, and he said I tried.

Q. I tried to choke her with a cord?

A. That was his only exception to any of the questions that I had asked him.

That is all the evidence we have to go on from the record about the details of what occurred.

{¶34} The state's arguments at trial don't suggest anything that could be construed as separate conduct either. In closing argument, the prosecutor summed up the evidence supporting the domestic-violence charge this way: "[T]hrough excited utterances we know that the defendant broke that door down, obviously in a rage, choked her and left the scene before the police officers could get there." As to the felonious-assault count, the prosecutor cited the same conduct, stressing that the cord used in the assault constituted a deadly weapon:

The second count is a felonious assault, and the felonious assault is not a count where we have to show there is serious physical harm. All we have to show is what was used in this situation was a deadly weapon. A cord in and of itself is not a deadly weapon, but when it's used in a manner to wrap around an individual's neck, it is obvious it can be used for purposes of serious physical harm, or death. * * * We don't have to show anything other than the fact that he attempted to cause harm by means of a deadly weapon * * *.

Based on this record it seems crystal clear to me, at least, that the state relied upon the same conduct to prove both offenses. The only fair reading of the record is that Mr. Goshade administered one beating to the victim in which he strangled her with his hands and a cord.

{¶35} One way to understand the majority's contrary opinion is that it is premised upon the idea that there was some type of temporal space between a beating administered by Mr. Goshade's hands and the use of the cord. *See* majority opinion at ¶ 26 ("If his conduct had ended after he had beaten the victim, he could not have been convicted of felonious assault"). And if the record supported this inference that there was a beating followed by a temporal interruption and subsequent attempt to choke the victim with a cord, there would be a good argument that two separate offenses occurred. *See, e.g., State v. Harmon*, 9th Dist. Summit No. 26502, 2013-Ohio-1769, ¶ 29. But here the record is to the contrary.

{¶36} Another way to understand the majority's opinion might be to bespeak significance to the fact that Mr. Goshade used both a cord and his hands to hurt his

14

victim. *See* majority opinion at ¶ 25. But such a construction of the allied-offenses statute leads to untenable—even absurd—results. Imagine the typical fight scene from a Hollywood movie (think Indiana Jones or maybe Clint Eastwood), where in the course of the conflict the assailant uses his fists, his feet, a beer bottle, a chair and who knows what else to go after his victim. Under the majority's reading of the statute, the number of charges the assailant might face would be limited only by the number of objects used in the struggle. That can't be the law.

{¶37} The majority's attempt to parse the assault of Ms. Edmondson into separate acts seems at odds with the Supreme Court's decision in *Johnson*. This is what the court said in *Johnson*:

> We decline the invitation of the state to parse Johnson's conduct into a blow-by-blow in order to sustain multiple convictions for the second beating. This beating was a discrete act that resulted in the simultaneous commission of allied offenses, child abuse and felony murder.

*Johnson* at ¶ 56. Adherence with *Johnson* requires that we decline the State's invitation in this case as well.

{¶38} So does adherence with our precedent. In *Anderson*, 2012-Ohio-3347, 974 N.E.2d 1236, we found that the state had relied upon the same conduct to prove aggravated robbery and kidnapping in a bank robbery case where a co-defendant brandished a weapon to move bank employees and customers out of the way while the defendant leapt over the bank counter to steal the bank's money. In finding that the offenses were not committed separately, we noted that that the "record does not

reflect a temporal or spatial separateness in the offenses." *Id.* at ¶ 24; *see State v. Lavender*, 1st Dist. Hamilton No. C-120508, 2013-Ohio-2508, ¶ 10.

{¶39} The Second District summed up the law in this area as follows: "When a course of conduct involves two or more acts or omissions undifferentiated by time, place, or circumstance, merger of multiple criminal offenses arising from that course of conduct is required because the offenses involve the 'same conduct.' " *State v. Johnson*, 2d Dist. Montgomery No. 24031, 2011-Ohio-2825, ¶ 25, quoting R.C. 2941.25(A). That seems a fairly good definition, and it is precisely the situation here.

{¶40} This leaves the ineffective-assistance claim. The way I see it, the allied-offenses issue is so clear cut that counsel was ineffective for failing to raise the issue at sentencing. The ineffective-assistance issue is largely beside the point, however, because the failure to merge the allied offenses constitutes plain error and we are required to remand whether it was raised or not.

{¶41} Of course, in a practical sense, the whole allied-offenses issue could be said to be somewhat academic in this case. Because the trial court ran Mr. Goshade's sentences concurrently, merging the convictions would not affect the overall length of his sentence. But we have been told that because Mr. Goshade is prejudiced by being convicted of more offenses than are authorized by law, this kind of error is not harmless. *See State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31; *see also Anderson*, 2012-Ohio-3347, 974 N.E.2d 1236, at ¶ 41. So as I see it, we are obligated to remand to the trial court for merger of the allied offenses.

{¶42} The bottom line is that Mr. Goshade committed one assault upon one victim. Because the victim was a family member, that felonious assault also constituted the offense of domestic violence. But because the same conduct was the basis for both crimes, and the crimes were committed neither separately or with a

16

separate animus, the sentencing court was required to merge the convictions.  My colleagues see it differently, so I respectfully dissent.

Please note:

The court has recorded its own entry on the date of the release of this opinion.