[Cite as *State v. Carner*, 2012-Ohio-1190.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96766**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BYRON CARNER

DEFENDANT-APPELLANT

**JUDGMENT:**
**CONVICTIONS AFFIRMED; SENTENCE VACATED**
**IN PART AND REMANDED FOR RESENTENCING**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-541812

BEFORE:   Kilbane, J., Stewart, P.J., and Cooney, J.

RELEASED AND JOURNALIZED:   March 22, 2012

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender
Nathaniel McDonald
Assistant Public Defender
310 Lakeside Avenue
Suite 400
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Brian D. Kraft
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Byron Carner ("Carner"), appeals his convictions and sentence. Finding merit to the appeal, we affirm Carner's convictions, but vacate his sentence in part and remand the matter for resentencing.

{¶2} In September 2010, Carner was charged in a 12-count indictment. Count 1 charged him with felonious assault of Cleveland police officer Christopher Holstein ("Holstein"). Counts 2 and 3 charged him with the felonious assault of his nephew, Tyrone Banks ("Banks"). Count 4 charged him with carrying a concealed weapon. Counts 5–9 charged him with aggravated menacing. Counts 10–12 charged him with domestic violence.

{¶3} The matter proceeded to a jury trial, at which the following evidence was adduced.

{¶4} On the evening of September 2, 2010, Banks had an argument with his uncle, Byron Carner, regarding Carner's use of drugs in the home they shared at 853 Whitcomb Road in Cleveland, Ohio. Banks and Carner shared the home with Banks's mother, sisters, and grandmother. The next morning, as Banks passed Carner on the stairs, Carner muttered something to Banks relating to an argument the day before. Banks followed Carner downstairs and into the living room, where Carner hit Banks on the head with a

glass vase. The two then began to fight. Banks's sister called the police, and Banks's friends, who came over to visit, separated Banks and Carner.

{¶5} Carner attempted to leave through the front door, but was blocked by Banks, his sister, and his friends. They wanted Carner to be present when the police arrived. Carner then went through the kitchen to the back door. In the kitchen, Carner picked up a knife, waved it in the direction of Banks, his sister, and his friends and told them he would kill them if they did not let him leave. Carner then exited through the back door.

{¶6} At approximately the same time, Cleveland police arrived at the scene. Holstein and his partner, Cleveland police officer Andrew Papaleo ("Papaleo"), learned from Carner's family members that Carner was running through the yards near their home. Holstein then walked up the driveway of a neighbor's house. When he reached the back of this house, he encountered Carner. Carner was standing approximately eight feet from Holstein and was holding a large knife in an overhead fashion. Holstein had his gun drawn and pointed at Carner. He ordered Carner to "drop the knife, drop the knife, drop the knife." Holstein testified that Carner then lunged at him while bringing the knife downward in an aggressive manner. Holstein, who feared for his safety, responded by firing his gun three times at Carner. Carner was approximately four feet away when Holstein fired his gun. Holstein testified Carner fell to the ground after being shot and dropped the knife. Holstein kept his gun on Carner until Papaleo and Cleveland Police Detective Theodore Perez ("Perez") arrived.

{¶7} Perez testified that he arrived on the scene after Holstein and walked up the driveway. He observed Holstein with his gun drawn. He heard Holstein say "drop the knife, drop the knife, drop the knife." Then, he heard three gunshots. He stopped for a second and then continued up the driveway. He observed Carner lying on the ground, with the knife also on the ground. Holstein had his gun pointed at Carner. Carner said, "you shot me." Holstein replied, "you lunged at me. I told you to drop it." Perez described Holstein as visibly upset.

{¶8} Papaleo testified that he arrived on the scene after Perez. He observed Perez and Holstein standing by Carner, who was lying on the ground. Papaleo further testified that Carner said to him, "[y]our partner shot me." Holstein replied, "[Carner] lunged at me." Papaleo described Holstein's emotional state at that time as upset because Holstein was "pacing back and forth and grabbing his head * * *."

{¶9} Collin Gonzalez ("Gonzalez") testified that he lived a few houses away from where the incident occurred. He heard three gunshots and, when he looked outside, he observed Holstein walking around with his hands on his head. He heard Carner yell, "you shot me, you shot me" and Holstein reply, "you lunged at me."

{¶10} At the close of the State's case, the State moved to dismiss Count 4 (carrying a concealed weapon), Counts 6–9 (aggravated menacing) and Counts 11 and 12 (domestic violence). In an unusual trial strategy, defense counsel objected to the dismissal of these counts, arguing that he intended to argue to the jury that the State over-indicted Carner in a concerted effort to insulate Holstein from legal responsibility for his mistake in shooting

Carner. The State argued the dismissal of the counts was due to witness noncooperation. The trial court overruled defense counsel's objection and dismissed Counts 4, 6–9, 11, and 12. Defense counsel requested that Count 2 be amended to simple assault and Count 3 be dismissed under Crim.R. 29. The trial court granted the motion with respect to Count 2 and denied the motion with respect to Count 3. As a result, the following charges were presented to the jury: Count 1 — felonious assault on a police officer, Count 2 — simple assault on Banks, Count 3 — felonious assault on Banks, Count 5 — aggravated menacing concerning Banks, and Count 10 — domestic violence concerning Banks.

{¶11} The jury found Carner guilty of all five counts. The trial court sentenced Carner to 4 years in prison on Count 1, six months in prison on Count 2, three years in prison on Count 3, 90 days in prison on Count 5, and six months in prison on Count 10. The trial court ordered that all prison terms be served concurrently, for an aggregate of four years in prison. The trial court found Carner indigent and ordered Carner to pay court costs.

{¶12} Carner now appeals, raising the following five assignments of error for review, which shall be discussed together where appropriate.

ASSIGNMENT OF ERROR ONE

When [the trial court] prohibited defense counsel from mentioning the dismissed counts of the indictment in closing argument, [it] violated [Carner's] right to present his defense, right to effective assistance of counsel, and right to a fair trial pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

ASSIGNMENT OF ERROR TWO

[Carner] was denied his Sixth Amendment right to effective assistance of counsel because his counsel failed to object to hearsay statements that he "lunged" at officer Holstein.

ASSIGNMENT OF ERROR THREE

[Carner's] conviction for felonious assault on a [police] officer was against the manifest weight of the evidence.

ASSIGNMENT OF ERROR FOUR

The trial court failed to treat the assault, felonious assault, and domestic violence convictions as allied offenses of similar import and merge them at the sentencing hearing.

ASSIGNMENT OF ERROR FIVE

Ineffective assistance of counsel due to failure to request waiver of, or object to, court costs for an indigent defendant.

Dismissed Counts and Closing Argument

{¶13} In the first assignment of error, Carner argues the trial court violated his constitutional rights to present his defense, effective assistance of counsel, and a fair trial when it precluded him from arguing that the dismissed counts indicate an overreaching by the State to insulate Holstein from the consequences of mistakenly shooting Carner.

{¶14} We recognize that counsel is afforded great latitude in the presentation of closing argument to the jury. *Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990), at paragraph two of the syllabus. However, "[t]he assessment of whether the permissible bounds of closing argument have been exceeded is, in the first instance, a discretionary

function to be performed by the trial court. Such determination will not be reversed on appeal absent an abuse of discretion." *Id.* at paragraph three of the syllabus. An abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

{¶15} Here, the State moved to dismiss Counts 4, 6, 7, 8, 9, 11, and 12, which was more than half of the counts against Carner. Defense counsel opposed the State's motion, arguing that part of his defense was that the State over-indicted Carner in an effort to obtain a conviction and insulate Holstein from legal accountability for his mistake in shooting Carner. The following exchange took place:

> [DEFENSE COUNSEL]: You know, part of my argument is that when there is a police shooting, the police go over board a little bit and they might cover for one another, and I intend to argue to the jury that these indictments prove this. * * * [The number of charges] just proves the [onslaught] that [the State will] put against a defendant when they need to protect someone that's on their side of the fence. So really, I have to object to the dismissal, Judge.
>
> * * *
>
> THE COURT: Well, by that argument you would object to a dismissal of the indictment in its entirety, wouldn't you?
>
> [DEFENSE COUNSEL]: Of all counts?
>
> THE COURT: Yes.
>
> [DEFENSE COUNSEL]: I would probably let that go by, Judge.
>
> THE COURT: Oh, okay. I'm sorry counsel, I deny your request. The State can dismiss.

[DEFENSE COUNSEL]: Okay. Then let me ask you this. * * * By dismissing these counts, am I going to be prohibited from arguing that they were there, that they're not there, and this is what this man faced. This is what this man had to defend. And they brought these charges knowing that they had no evidence. I presume I can still argue it.

[THE STATE]: I'd like to be heard on that matter, if necessary, your Honor.

THE COURT: Go ahead.

[THE STATE]: Okay. That just simply isn't the case. Every count that I've just dismissed besides the carrying concealed weapon count, there was evidence of. It was just the State's inability to call some of these witnesses due to their noncooperation with the State of Ohio. I mean, [Banks] testified that all those people were present and all were present during the situation with the defendant waiving [sic] the knife. It has no connection to the law enforcement end of this case.

* * *

THE COURT: I was prepared to grant a Rule 29 request for most of these counts that the State is dismissing, precisely because these witnesses didn't come forward. As I recall the testimony[, there] was a scene described where the defendant had a knife and others are surrounding him and he's allegedly making a statement that he's going to cause harm to anyone who approaches, or confronts, or tries to keep him from leaving the premises. So I don't know that those counts really suggest a policy of over-indicting because the officer happened to shoot [Carner]. I would have granted a motion Rule 29 on the basis that no one came forward and said, yeah, I felt threatened. I was menaced, I was in fear. * * * So I guess I'm not going to let you make that sort of ominous argument that we had all these other charges and my goodness * * * we took care of them. That shows the unfairness of the injustice of the process. So we will go forward with the counts that are left.

{¶16} Based on the above exchange, we do not find that the trial court's attitude was unreasonable, arbitrary, or unconscionable. The trial court indicated that it was prepared to grant a Crim.R. 29 request to dismiss most of the counts because the witnesses did not

come forward. The trial court considered defense counsel's creative argument, but did not find that the State over-indicted Carner because Holstein shot Carner. As a result, the trial court exercised its discretion and determined that defense counsel cannot make that "ominous argument."

{¶17} Accordingly, the first assignment of error is overruled.

Ineffective Assistance of Counsel

{¶18} In the second and fifth assignments of error, Carner challenges the effectiveness of defense counsel. Carner argues defense counsel was ineffective for failing to object to the hearsay statements suggesting that Carner lunged at Holstein. Carner further argues that defense counsel was ineffective for failing to request a waiver of court costs because Carner was declared indigent.

{¶19} In order to substantiate a claim for ineffective assistance of counsel, Carner must demonstrate

> (a) deficient performance ("errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment") and (b) prejudice ('errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable'). *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. *Accord State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

*State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 30.

{¶20} In Ohio, a properly licensed attorney is presumed competent. *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 209 N.E.2d 164 (1965). In evaluating whether a petitioner has been denied the effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and

substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976); *State v. Calhoun*, 86 Ohio St.3d 279, 1999-Ohio-102, 714 N.E.2d 905. To demonstrate that a defendant has been prejudiced, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus.

## Hearsay Statements

{¶21} Carner argues that defense counsel was ineffective for failing to object to hearsay statements by witnesses who essentially testified that Holstein shot Carner after he lunged at Holstein. Specifically, Papaleo testified that after the shooting, Carner said to him, "your partner shot me." To which Holstein replied, "why did you lung[e] at me." A neighbor, Collin Gonzalez, testified that he heard Carner say, "you shot me" and Holstein reply, "you lunged at me." Lastly, Perez testified that Carner said, "you shot me" and Holstein replied, "I told you to drop it." This exchange occurred within seconds after the shooting. The witnesses described Holstein as upset. He spoke with his voice raised and was pacing back and forth. Carner contends that without these hearsay statements, the only evidence that he lunged at Holstein would be Holstein's testimony.

**{¶22}** At oral argument, however, appellate counsel conceded that these statements qualify under the excited utterance hearsay exception. We note that excited utterances are excepted from the hearsay rule under Evid.R. 803(2) as long as the statement relates to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

**{¶23}** Thus, the second assignment of error is overruled.

### Court Costs

**{¶24}** Carner next argues that defense counsel was ineffective for failing to request a waiver of court costs because Carner was declared indigent and assigned counsel. Carner claims there is a reasonable probability that the court would have granted the motion if it was requested by defense counsel.

**{¶25}** R.C. 2947.23 governs the imposition of court costs and provides in pertinent part that: "In all criminal cases * * * the judge * * * shall include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs." The Ohio Supreme Court has stated that R.C. 2947.23 *requires* a court to assess costs against all convicted defendants." (Emphasis sic.) *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8. Court costs may, however, be waived in the discretion of the court if the court first determines that the defendant is indigent. *Id*. at ¶ 14. The "indigent defendant must move a trial court to waive payment of costs at the time of sentencing. If the defendant makes such a motion, then the issue is preserved for appeal and will be reviewed under an abuse-of-discretion standard. Otherwise, the issue is

waived and costs are res judicata." *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 23.

**{¶26}** In the instant case, the trial court appointed counsel because it declared Carner indigent in September 2010. At the sentencing hearing, the trial court advised Carner that it was imposing court costs. The sentencing entry indicates that "defendant is indigent. The court appoints the public defenders['] office for purposes of appeal. Defendant is to pay court costs." From this record, we can reasonably determine that when the trial court sentenced Carner, including ordering him to pay costs, it took into account his indigent status. As such, we cannot say that there is a reasonable probability that, but for defense counsel's errors, the result of the proceeding would have been different. *See State v. Bagwell*, 8th Dist. No. 96419, 2011-Ohio-5841 (where this court found that defense counsel was not ineffective for failing to request a waiver of court costs).

**{¶27}** Thus, the fifth assignment of error is overruled.

Manifest Weight

**{¶28}** In the third assignment of error, Carner argues his conviction for felonious assault on a police officer is against the manifest weight of the evidence.

**{¶29}** With regard to a manifest weight challenge, the

reviewing court asks whose evidence is more persuasive — the state's or the defendant's? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. [*State v. Thompkins*,

78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997)], citing [*Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982)].

*State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25.

{¶30} Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin*.

{¶31} In the instant case, Carner was convicted of felonious assault of a police officer under R.C. 2903.11(A)(2), which provides in pertinent part: "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Furthermore, "[i]f the victim of a violation of division (A) of this section is a peace officer * * *, felonious assault is a felony of the first degree." *Id.* at (D)(1)(a).

{¶32} Carner argues that his conviction is against the manifest weight of the evidence because the testimony of the other officers indicates a concerted effort to insulate Holstein from responsibility by convicting Carner of felonious assault. He refers to the fact that no one, other than Holstein, observed Carner's response to Holstein's orders to drop the knife and Perez's and Papaleo's testimony about the knife.

{¶33} In the instant case, Perez testified that when he arrived on the scene, the knife was within inches of Carner, so Perez kicked it approximately two feet away from Carner. Papaleo testified that the knife was on the ground and within approximately two feet of Carner, so he kicked it away from Carner. Papaleo further testified that he kicked it approximately eight to ten feet away, ending up about a foot from where the grass meets the driveway. Perez testified, however, that he did not observe Papaleo kick the knife approximately eight to ten feet.

{¶34} In *State v. Montgomery*, 8th Dist. No. 95700, 2011-Ohio-3259, ¶ 10, we stated:

> A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. The determination of weight and credibility of the evidence is for the trier of fact. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. As such, the trier of fact is free to believe or disbelieve all or any of the testimony. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. (Citations omitted.) *Id.*, quoting *State v. Blackman*, 8th Dist. No. 95168, 2011-Ohio-2262.

{¶35} While there may have been inconsistencies as to what happened with the knife, the jury was in the best position to take into account any inconsistencies and believed Holstein's testimony that Carner lunged at him with a knife. Perez and Papaleo both testified that Holstein said Carner lunged at him. Moreover, Gonzalez, an independent witness, testified that he heard three gunshots, and when he looked outside, he observed Holstein walking around with his hands on his head. He heard Carner yell, "you

shot me, you shot me" and Holstein reply, "you lunged at me." Accordingly, we cannot say that the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶36} Thus, Carner's felonious assault on a peace officer conviction is not against the manifest weight of the evidence.

{¶37} Therefore, the third assignment of error is overruled.

<u>Merger of Allied Offenses</u>

{¶38} In the fourth assignment of error, Carner argues the trial court erred by failing to merge the assault (Count 2), felonious assault (Count 3), and domestic violence (Count 10) counts.

{¶39} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court redefined the test for determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25.[1] The *Johnson* court

---

[1]R.C. 2941.25 governs allied offenses and provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

expressly overruled *State v. Rance*, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, which required a "comparison of the statutory elements in the abstract" to determine whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other.

{¶40} The *Johnson* court held that rather than compare the elements of the crimes in the abstract, courts must consider the defendant's conduct. *Id.* at syllabus. The court found:

> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. * * *
>
> If multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." [*State v.*] *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50, (Lanzinger, J., dissenting).
>
> If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.
>
> Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge. *Id.* at ¶ 48-50.

{¶41} In the instant case, a review of the record reveals that there was no discussion of the merger of allied offenses at sentencing. The Ohio Supreme Court has found that the failure to merge allied offenses of similar import constitutes plain error. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31, citing *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845. Under Crim.R. 52(B),

"[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

{¶42} Felonious assault is defined in R.C. 2903.11(A)(1) as follows: "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." Assault is defined in R.C. 2903.13(A) as follows: "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." Domestic violence is defined in R.C. 2919.25(A) as follows: "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶43} In analyzing these three offenses under *Johnson*, we find that they could be committed by the same conduct. Simple assault is a lesser included offense of felonious assault. *State v. Tolbert*, 60 Ohio St.3d 89, 92, 573 N.E.2d 617 (1991). It follows then that both offenses could be committed with the same conduct. Similarly, "it is possible to commit the offenses of felonious assault and domestic violence with the same conduct." *State v. Sutphin*, 8th Dist. No. 96015, 2011-Ohio-5157, ¶ 59, citing *Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061.

{¶44} At oral argument, the State conceded that the assault and domestic violence counts merge, but not the felonious assault count. The State contends that Carner's gestures towards Banks with the knife constitutes a separate act. However, that was not the State's theory below. When discussing the dismissal of the felonious assault count at trial, the State argued that Count 3 "should certainly stay. The jury will be able to touch and feel the vase. It's a heavy object that was used as a bludgeon." Furthermore, in

closing argument, the State relied on the same conduct (Carner fighting with his nephew, Banks, and hitting Banks in the head with the vase) to support Carner's convictions for assault, felonious assault, and domestic violence. "We therefore are 'compelled to view the record as it stands in revisiting the issue.' *See State v. Craycraft*, 12th Dist. Nos. CA2009-02-013 and CA2009-02-014, 2011-Ohio-413, ¶ 19." *Sutphin* at ¶ 61 (where the State relied on the same conduct in opening statement and closing argument to prove both offenses at trial, it cannot then change its theory on appeal).

**{¶45}** Based on the record before us, we find that the charges arose from the same conduct and Carner committed these offenses with a single animus. As a result, the trial court committed plain error by not merging the assault (Count 2), felonious assault (Count 3), and domestic violence (Count 10) counts for sentencing.

**{¶46}** Accordingly, the fourth assignment of error is sustained. We vacate Carner's sentences on Counts 2, 3, and 10, and remand the matter for a sentencing hearing, at which the State will elect which allied offense it will pursue against Carner. *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, at paragraphs one and two of the syllabus.

**{¶47}** Accordingly, Carner's convictions are affirmed, his sentence is vacated in part, and the matter is remanded for further proceedings on the resentencing of allied offenses.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MELODY J. STEWART, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR