[Cite as *State v. Grimm*, 2019-Ohio-2961.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO, : 

    Appellee, :           CASE NO. CA2018-10-071

     :           O P I N I O N
  - vs -                  7/22/2019

     : 

JASON ROBERT GRIMM, :

    Appellant. :

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2018-CR-000074

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

Stagnaro, Hannigan & Koop, Michaela M. Stagnaro, 30 Garfield Place, Suite 760, Cincinnati, Ohio 45202, for appellant

    **S. POWELL, P.J.**

    {¶ 1} Appellant, Jason Robert Grimm, appeals his conviction in the Clermont County Court of Common Pleas after a jury found him guilty of one count of domestic violence. Grimm also appeals the trial court's decision sentencing him to serve a mandatory 15-month prison term. For the reasons outlined below, we affirm.

{¶ 2} On January 25, 2018, the Clermont County Grand Jury returned an indictment charging Grimm with domestic violence in violation of R.C. 2919.25(A). Due to Grimm's prior domestic violence conviction, the offense was charged as a fourth-degree felony pursuant to R.C. 2919.25(D)(3). The charge arose after it was alleged Grimm caused physical harm to the victim, B.J., his then seven-months-pregnant girlfriend. Because there could be no dispute that Grimm knew B.J. was pregnant when the alleged domestic violence incident occurred, the offense carried with it a mandatory term of "at least" six months in prison in accordance with R.C. 2919.25(D)(6)(a).

{¶ 3} On August 28 and 29, 2018, the matter proceeded to a two-day jury trial. During trial, the jury heard testimony from several witnesses. These witnesses included B.J., Officer Geremy Grooms of the Union Township Police Department, and the two nurses who treated B.J. for her injuries, Angela Gonzalez and Judith Faessler. Neither Grimm nor any other witness testified in Grimm's defense.

{¶ 4} As part of her testimony, B.J. testified that Grimm "busted" her lip, picked her up by her neck, and slammed her into the wall of their apartment after she and Grimm returned home from a festival held in Cincinnati. This caused B.J.'s left side of her body and pregnant belly to go through the wall and leave an imprint. After slamming B.J. into the wall, Grimm then strangled B.J. and struck her in the face and ribs. Grimm's attack eventually stopped after B.J. was able to retrieve her cell phone and call the police Upon learning B.J. had called the police, Grimm fled the scene and drove to his mother's house. Photographs and a short video recording depicting Grimm aggressively coming toward B.J. followed by several smacking sounds corroborates B.J.'s testimony.[1]

---

1. One photograph admitted as evidence shows a damaged wall with an imprint of what appears to be a pregnant female body. Other photographs depict B.J.'s "busted" lip, as well as red marks, scratches, and bruises on B.J.'s arms, chest, and neck.

{¶ 5} After both parties rested, the trial court provided its final instructions to the jury. This included an instruction on flight as evidence of Grimm's consciousness of guilt. Following deliberations, the jury returned a verdict finding Grimm guilty as charged. The trial court then sentenced Grimm to serve a mandatory 15-month prison term. The trial court issued its sentencing decision after considering the principles and purposes of felony sentencing as set forth in R.C. 2929.11 and the serious and recidivism factors listed in R.C. 2929.12. This is confirmed by the sentencing hearing transcript and the trial court's sentencing entry, wherein the trial court specifically stated that it had reviewed and considered both statutes prior to issuing its sentencing decision.

{¶ 6} Grimm now appeals his conviction and sentence, raising six assignments of error for review.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED AS A MATTER OF LAW BY ALLOWING THE STATE TO INTRODUCE HEARSAY STATEMENTS WHICH VIOLATED APPELLANT'S RIGHT TO A FAIR TRIAL.

{¶ 9} In his first assignment of error, Grimm argues the trial court erred by admitting several alleged hearsay statements from Officer Grooms at trial. Grimm also argues the trial court erred by admitting other alleged hearsay statements from nurses Gonzales and Faessler. Grimm acknowledges that he objected to only "some" of these challenged statements, thereby waiving all but plain error as to those statements to which he did not object. But, even when applying an abuse of discretion standard of review, we find no merit to any of Grimm's arguments raised herein.

{¶ 10} When properly objected to, this court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *State v. Gerde*, 12th Dist. Clermont No. CA2016-11-077, 2017-Ohio-7464, ¶ 8. An abuse of discretion connotes more

- 3 -

than an error of law or judgment; it implies the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Grindstaff*, 12th Dist. Clermont No. CA2013-09-074, 2014-Ohio-2581, ¶ 21. A decision is unreasonable when it is "unsupported by a sound reasoning process." *State v. Abdullah*, 10th Dist. Franklin No. 07AP-427, 2007-Ohio-7010, ¶ 16, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). This court "should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 14, citing *State v. Smith*, 12th Dist. Fayette No. CA2007-10-035, 2008-Ohio-5931, ¶ 33.

{¶ 11} Grimm initially argues the trial court erred by permitting Officer Grooms to testify as to B.J.'s statements to him at the scene approximately five minutes after she called the police. However, contrary to Grimm's claim, B.J.'s statements to Officer Grooms fall squarely within the excited utterance exception to the hearsay rule. Pursuant to Evid.R. 803(2), a hearsay statement is admissible as an excited utterance if: "(1) there was an event startling enough to produce a nervous excitement in the declarant; (2) the statement was made while under the stress of excitement caused by the event; (3) the statement related to the startling event; and (4) the declarant must have had an opportunity to personally observe the startling event." *State v. Worth*, 10th Dist. Franklin No. 10AP1125, 2012-Ohio-666, ¶ 22, citing *State v. Taylor*, 66 Ohio St.3d 295, 300-301 (1993). Given Officer Grooms' testimony that B.J. was "very emotional," "clearly upset," crying, scared, red in the face, and exhibiting signs that she "had been in an altercation," the trial court did not abuse its discretion by admitting Officer Grooms' challenged testimony in accordance with Evid.R. 803(2). Grimm's claim otherwise lacks merit.

{¶ 12} Also lacking merit are Grimm's claims the trial court erred by permitting nurses Gonzalez and Faessler to testify regarding B.J.'s statements she made to them at the

hospital while seeking treatment for herself and her unborn baby. Again, contrary to Grimm's claim, the vast majority of B.J.'s statements made to nurses Gonzalez and Faessler fall well within the "medical treatment" exception to the hearsay rule under Evid.R. 803(4). Pursuant to that rule, an exception exists for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." "A fundamental assumption underlying the medical-treatment exception is that this particular hearsay is reliable." *State v. Wagers*, 12th Dist. Preble No. CA2009-06-018, 2010-Ohio-2311, ¶ 51. This exception applies even to statements made to psychological caregivers, therapists, and social workers. *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 56.

{¶ 13} The only questionable statement would be B.J.'s statements to nurses Gonzalez and Faessler naming Grimm as her attacker. However, while a question may exist as to the admissibility of this testimony, B.J. specifically testified that it was Grimm who caused her injuries. The record also contains a short video recording depicting Grimm aggressively coming toward B.J. followed by several smacking sounds. This evidence alleviates any doubt as to the identity of B.J.'s alleged attacker, thereby rendering any error the trial court may have made by admitting this evidence, at worst, harmless. "A reviewing court properly finds the erroneous admission of evidence harmless error where there is overwhelming evidence of guilt or some other indicia the error did not contribute to the conviction." *State v. Rowley*, 12th Dist. Clinton No. CA2016-10-019, 2017-Ohio-5850, ¶ 24, citing *State v. Pottorf*, 12th Dist. Warren No. CA2014-03-046, 2014-Ohio-5399, ¶ 20. Therefore, finding no merit to any of the arguments raised herein, Grimm's first assignment of error is overruled.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE TRIAL COURT ERRED AS A MATTER OF LAW BY PERMITTING OTHER ACTS TESTIMONY INTO EVIDENCE THUS PREJUDICING APPELLANT'S RIGHT TO A FAIR TRIAL.

{¶ 16} In his second assignment of error, Grimm argues the trial court erred by admitting so-called "other acts" evidence at trial. We disagree.

{¶ 17} Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 40. Pursuant to Evid.R. 404(B), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that a person acted in conformity therewith on a particular occasion. *State v. Hart*, 12th Dist. Warren No. CA2008-06-079, 2009-Ohio-997, ¶ 11. Such evidence, however, is permitted for other purposes, including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident. *State v. Thomas*, 12th Dist. Butler No. CA2012-11-223, 2013-Ohio-4327, ¶ 22.

{¶ 18} Similar to Evid.R. 404(B), the General Assembly has promulgated R.C. 2945.59, which provides:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶ 19} Both the statute and the rule "codify the common law with respect to evidence

- 6 -

of other acts of wrongdoing," and preclude admission of other acts evidence to prove a character trait in order to demonstrate conduct in conformity with that trait. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 16; *State v. Vore*, 12th Dist. Warren No. CA2011-08-093, 2012-Ohio-2431, ¶ 39-40. Therefore, under either Evid.R. 404(B) or R.C. 2945.59, "[t]o be admissible, the other-act evidence must tend to show by substantial proof one or more of the things that the rule or statute enumerates," such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 68 (12th Dist.). "[T]he trial court is afforded broad discretion regarding the admission of other acts evidence." *State v. Ward*, 12th Dist. Clermont No. CA2013-07-059, 2014-Ohio-990, ¶ 40.

{¶ 20} Grimm initially argues the trial court erred by admitting testimony that he was intoxicated on the night in question, as well as testimony that he "wanted to fight other people that night," and that he fled the scene and drove to his mother's house after B.J. called the police. However, none of this testimony can be considered "other acts" evidence under either Evid.R. 404(B) or R.C. 2945.59. Rather, this testimony was properly admitted in order to describe the events that formed "'the immediate background of the alleged act which forms the basis for the crime charged.'" *State v. Wainscott*, 12th Dist. Clermont No. CA2015-07-056, 2016-Ohio-1153, ¶ 19, quoting *State v. Crew*, 2d Dist. Clark No. 2009 CA 45, 2010-Ohio-3110, ¶ 99. "[E]vidence of other crimes or wrongs may be admitted when such acts are so inextricably intertwined with the crime as charged that proof of one involves the other, explains the circumstances thereof, or tends logically to prove any element of the crime charged." *State v. Davis*, 64 Ohio App.3d 334, 341 (12th Dist.1989), citing *State v. Wilkinson*, 64 Ohio St.2d 308, 317 (1980). Therefore, because this challenged testimony was admissible to describe the events in question, Grimm's first argument lacks merit.

{¶ 21} Grimm also argues the trial court erred by admitting B.J.'s testimony that he

had a history of domestic violence against her. Grimm, however, did not object to this testimony, thereby waiving all but plain error. *State v. Rogers*, 12th Dist. Butler No. CA2017-08-112, 2018-Ohio-1356, ¶ 24. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error does not exist unless, but for the error, the outcome of the trial would have been different. *State v. Blacker*, 12th Dist. Warren No. CA2008-07-094, 2009-Ohio-5519, ¶ 39, citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996). Notice of plain error "'is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Haney*, 12th Dist. Clermont No. CA2005-07-068, 2006-Ohio-3899, ¶ 50, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 22} The trial court did not commit error, let alone plain error, in admitting B.J.'s testimony regarding Grimm's history of domestic violence against her. The complained of testimony – that B.J. was the victim of "cycles of abuse" during her multi-year relationship with Grimm – was elicited during cross-examination. However, regardless of how Grimm's history of domestic violence came to light, the record indicates B.J.'s testimony was innocuous and had no impact on the outcome of the case. This is particularly true here when considering the extensive, overwhelming evidence of Grimm's guilt and the parties' stipulation to the jury that Grimm had a prior domestic violence conviction. Given his prior domestic violence conviction, the fact that B.J. testified she was the victim of "cycles of abuse" during her multi-year relationship with Grimm would have had little, if any, impact on the jury's verdict. Therefore, because the trial court did not err by admitting the challenged testimony at issue, let alone commit plain error, Grimm's second argument also lacks merit. Accordingly, finding no merit to any of the arguments raised herein, Grimm's second assignment of error is overruled.

{¶ 23} Assignment of Error No. 3:

{¶ 24} THE TRIAL COURT ERRED AS A MATTER OF LAW IN INSTRUCTING THE JURY.

{¶ 25} In his third assignment of error, Grimm argues the trial court provided improper and otherwise incomplete jury instructions. Specifically, Grimm argues the trial court erred by failing to instruct the jury on assault as a lesser included offense, as well as by instructing the jury on flight as evidence of his consciousness of guilt. We disagree.

{¶ 26} Jury instructions are matters that are left to the sound discretion of the trial court. *State v. Brannon*, 12th Dist. Clinton No. CA2014-09-012, 2015-Ohio-1488, ¶ 20. The trial court, however, "must fully and completely give jury instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder." *State v. Davis*, 12th Dist. Madison, CA2015-05-015, 2016-Ohio-1166, ¶ 27, citing *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. In turn, this court may not reverse a conviction based upon faulty jury instructions unless it is clear that the jury instructions constituted prejudicial error. *State v. Napier*, 12th Dist. Clermont No. CA2016-04-022, 2017-Ohio-246, ¶ 30. Therefore, when reviewing a trial court's jury instructions, this court's duty is to merely "review the instructions as a whole, and, if taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial," affirm the trial court's decision. *Davis* at ¶ 28.

{¶ 27} Grimm initially argues the trial court erred by failing to instruct the jury on assault as a lesser included offense. A jury instruction on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense. *State v. Carroll*, 12th Dist. Clermont Nos. CA2007-02-030, CA2007-03-041, 2007-Ohio-7075, ¶ 136, citing *State v. Carter*, 89 Ohio St.3d 593, 600 (2000). An instruction is not warranted,

however, simply because the defendant offers some evidence to establish the lesser included offense. *State v. Gray*, 12th Butler No. CA2010-03-064, 2011-Ohio-666, ¶ 23, citing *State v. Shane*, 63 Ohio St.3d 630, 632-633 (1992). There must instead be sufficient evidence to allow the jury to reasonably reject the greater offense and find the defendant guilty on a lesser included offense. *State v. Anderson*, 12th Dist. Butler No. CA2005-06-156, 2006-Ohio-2714, ¶ 11. When making this determination the trial court must view the evidence in a light most favorable to the defendant. *Napier*, 2017-Ohio-246 at ¶ 33. We review a trial court's decision to not instruct the jury on a lesser included offense for an abuse of discretion. *State v. Doby*, 12th Dist. Butler No. CA2013-05-084, 2014-Ohio-2471, ¶ 17.

**{¶ 28}** As noted above, Grimm was convicted of domestic violence in violation of R.C. 2919.25(A). Pursuant to that statute, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." This is "very similar to the assault language in R.C. 2903.13(A)," which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." *State v. Maynard*, 4th Dist. Washington No. 10CA43, 2012-Ohio-786, ¶ 27. That is to say "[d]omestic violence in R.C. 2919.25(A) is essentially assault with the added element that the person assaulted is a 'family or household member.'" *State v. Houston*, 10th Dist. Franklin No. 16AP-157, 2017-Ohio-1122, ¶ 45. Therefore, given their similarities, assault in violation of R.C. 2903.13(A) can rightfully be considered a lesser included offense to domestic violence in violation of R.C. 2919.25(A). *See State v. Carner*, 8th Dist. Cuyahoga No. 96766, 2012-Ohio-1190, ¶ 43; *see also State v. Juntunen*, 10th Dist. Franklin No. 09AP-1108, 2010-Ohio-5625, ¶ 10 (remarking that the jury found the defendant "guilty of domestic violence and the lesser included offense of assault").

**{¶ 29}** Grimm argues an instruction on assault as a lesser included offense should

- 10 -

have been given to the jury since the jury could have reasonably rejected the state's evidence that B.J. was his "family or household member" at the time of the offense, thereby leading to an acquittal on domestic violence while at the same time supporting a conviction on assault. Grimm supports this claim by arguing that because B.J. had yet to give birth that she could not be considered his "family and household member" as set forth by R.C. 2919.25(F)(1)(b). Pursuant to that statute, a "family or household member" means "[t]he natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." Therefore, because B.J. had yet to give birth, Grimm argues B.J. was not yet the mother of any "child" for whom he was the father.

{¶ 30} However, even if we were to agree with Grimm's claim as it relates to the application of R.C. 2919.25(F)(1)(b), the record contains overwhelming and uncontroverted evidence that B.J. was his "family or household member" at the time the offense occurred under R.C. 2919.25(F)(1)(a)(i).[2] Under that statute, the phrase "family or household member" includes any person "who is residing or has resided with the offender" who at the time of the offense was "a spouse, a person living as a spouse, or a former spouse of the offender[.]" As defined by R.C. 2919.25(F)(2), a "person living as a spouse" means:

> a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

{¶ 31} Cohabitation, for purposes of R.C. 2919.25(F)(2), "encompasses two

2. The term "child" is not specifically defined under R.C. 2901.01. However, as set forth in R.C. 2901.01(B)(1)(a)(ii), the term "person" includes "[a]n unborn human who is viable." The term "viable" is defined by R.C. 2901.01(B)(1)(c)(ii) as "the state of development of a human fetus at which there is a realistic possibility of maintaining and nourishing of a life outside the womb with or without temporary artificial life-sustaining support." While this court need not determine whether the human fetus B.J. was carrying was viable at the time of the offense, we note that B.J. testified she was then 28-weeks pregnant with what would become Grimm's son. We also note that Grimm himself referred to the human fetus B.J. was then carrying as an "unborn child" as part of his appellate brief submitted to this court.

- 11 -

essential elements; namely, (1) the sharing of familial or financial responsibilities and (2) consortium." *State v. Perkins*, 12th Dist. Fayette No. CA2009-10-019, 2010-Ohio-2968, ¶ 12, citing *State v. Williams*, 79 Ohio St.3d 459, 465 (1997). Possible factors establishing shared familial or financial responsibilities "'include provisions for shelter, food, clothing, utilities, and/or commingled assets,'" whereas factors that establish consortium "'include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations.'" *State v. Partlow*, 10th Dist. Franklin No. 12AP-459, 2013-Ohio-2771, ¶ 7, quoting *Williams*. These factors are unique to each case and how much weight to give to each factor, if any, must be decided by the trier of fact on a case-by-case basis. *State v. Brauer*, 12th Dist. Warren No. CA2012-11-109, 2013-Ohio-3319, ¶ 16. But, although decided on a case-by-case basis, the trier of fact "should be guided by common sense and by ordinary human experience" when making this determination. *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, ¶ 73 (2d Dist.).

{¶ 32} A finding of cohabitation is proper where the victim and the offender "lived together and were in a relationship from which the domestic violence arose." *State v. McGlothan*, 138 Ohio St.3d 146, 2014-Ohio-85, ¶ 17. That is certainly the case here. Although acknowledging that she had occasionally stayed with her mother, B.J. testified that she had nevertheless resided in an apartment with Grimm throughout their multi-year relationship. This included times when B.J. stayed at the apartment alone for several weeks while Grimm was out of town for work. B.J. also testified that she kept "all [her] belongings" and clothes at the apartment, that she owned much of the furniture in the apartment, and that she routinely cleaned the apartment. B.J. further testified that she helped pay for rent, groceries, and that she had the cable bill placed in her name for a year. Therefore, because the record contains overwhelming and uncontroverted evidence that B.J. was his "family or household member" at the time of the offense under R.C. 2919.25(F)(1)(a)(i), the trial court

did not err by failing to instruct the jury on assault as a lesser included offense to domestic violence. This is true regardless of whether B.J. could also be considered a "family or household member" pursuant to R.C. 2919.25(F)(1)(b). Grimm's claim otherwise lacks merit.

{¶ 33} Grimm also argues the trial court erred by providing the jury with an instruction on flight as evidence of his consciousness of guilt. However, contrary to Grimm's claim, the record fully supports the trial court's decision to provide the instruction that it did. This includes the undisputed evidence that Grimm fled the scene and drove to his mother's house after B.J. called the police. The fact that Grimm may not have left the county is immaterial. Equally immaterial is the fact that Grimm may not have made any additional attempts to avoid apprehension by the police. Grimm's fleeing from the scene shortly after striking, choking, strangling, and slamming B.J. into the wall was strong evidence of his consciousness of guilt irrespective of the fact that he did not continue his efforts to evade the police. Therefore, under these circumstances, the trial court did not abuse its discretion by providing the jury with an instruction on flight as evidence of his consciousness of guilt. Accordingly, finding no merit to any of the arguments advanced herein, Grimm's third assignment of error is overruled.

{¶ 34} Assignment of Error No. 4:

{¶ 35} APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS THUS PREJUDICING HIS RIGHT TO A FAIR TRIAL.

{¶ 36} In his fourth assignment of error, Grimm argues his conviction must be reversed since he was provided with ineffective assistance of counsel. Grimm supports this claim by arguing his trial counsel should have objected to the alleged hearsay statements and so-called "other acts" evidence discussed above. Grimm also argues his trial counsel

- 13 -

was ineffective for failing to object to the trial court instructing the jury on flight as evidence of consciousness of his guilt, as well as by not arguing that instructing the jury "about whether [he] was the natural father of the child, was inappropriate, and even suggested that the instruction should be given." Given our holdings above in Grimm's first, second, and third assignments of error, we find Grimm's trial counsel was not deficient, and therefore, did not provide Grimm with ineffective assistance of counsel. Therefore, finding no merit to any of Grimm's claims raised herein, Grimm's fourth assignment of error is overruled.

{¶ 37} Assignment of Error No. 5:

{¶ 38} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTIONS.

{¶ 39} In his fifth assignment of error, Grimm argues his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Grimm supports this claim by arguing the state failed to prove B.J. was his "family or household member" under either R.C. 2919.25(F)(1)(a) or (b). However, as noted above, the state provided overwhelming and uncontroverted evidence that B.J. was Grimm's "family or household member" at the time of the offense as that phrase is defined under R.C. 2919.25(F)(1)(a)(i). This, as stated previously, is true regardless of whether B.J. could also be considered a "family or household member" pursuant to R.C. 2919.25(F)(1)(b). Therefore, when considering the evidence presented at trial, the jury could have found the essential elements of the crime were proven beyond a reasonable doubt. The jury did not lose its way in reaching this decision. Accordingly, finding his conviction was supported by sufficient evidence and not against the manifest weight of the evidence, Grimm's fifth assignment of error lacks merit and is overruled.

{¶ 40} Assignment of Error No. 6:

{¶ 41} THE TRIAL COURT ERRED AS A MATTER OF LAW BY IMPROPERLY SENTENCING APPELLANT.

{¶ 42} In his sixth assignment of error, Grimm argues the trial court erred by sentencing him to serve a mandatory 15-month prison term.  We disagree.

{¶ 43} As with all felony sentences, we review the trial court's sentencing decision under the standard of review set forth in R.C. 2953.08(G)(2).  *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1.  Pursuant to that statute, this court may modify or vacate a sentence only if, by clear and convincing evidence, "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Harp*, 12th Dist. Clermont No. CA2015-12-096, 2016-Ohio-4921, ¶ 7.  A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range."  *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8.  This court may therefore "increase, reduce, or otherwise modify a sentence only when it clearly and convincingly finds that the sentence is (1) contrary to law or (2) unsupported by the record."  *State v. Brandenburg*, 146 Ohio St.3d 221, 2016-Ohio-2970, ¶ 1, citing *Marcum* at ¶ 7.

{¶ 44} Grimm initially argues the trial court erred by sentencing him to serve a mandatory 15-month prison term in accordance R.C. 2919.25(D)(6)(a) when that statute grants the trial court authority to impose a mandatory prison sentence of just six months.  However, based on the plain language found in that statute, the trial court was required to impose a mandatory prison term of "at least" six months.  This was because Grimm, who had a prior domestic violence conviction, knew that B.J. was pregnant when the domestic violence indecent occurred.  Therefore, by sentencing Grimm to a mandatory 15-month

prison term, the trial court complied with the statutory requirements set forth in R.C. 2919.25(D)(6)(a) when sentencing him to that fourth-degree felony domestic violence offense. Grimm's claim otherwise lacks merit.

{¶ 45} Grimm also argues the trial court's decision sentencing him to a mandatory 15-month prison term must be reversed because the trial court failed to give proper consideration to either the principles and purposes of felony sentencing as set forth in R.C. 2929.11 or the serious and recidivism factors listed in R.C. 2929.12. Grimm's argument is essentially a challenge to the trial court's decision as to the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11, as well as the analysis and balancing of the seriousness and recidivism factors in R.C. 2929.12. However, rather than this court on appeal, it is the trial court, who, "in imposing a sentence, determines the weight afforded to any particular statutory factors, mitigating grounds, or other relevant circumstances." *State v. Steger*, 12th Dist. Butler No. CA2016-03-059, 2016-Ohio-7908, ¶ 18, citing *State v. Stubbs*, 10th Dist. Franklin No. 13AP-810, 2014-Ohio-3696, ¶ 16. The fact that the trial court chose to weigh the various sentencing factors differently than how Grimm would have liked does not mean the trial court erred by imposing the sentence that it did. *State v. Abrams*, 12th Dist. Clermont Nos. CA2017-03-018 and CA2017-03-019, 2017-Ohio-8536, ¶ 17. Therefore, finding no error with the trial court's sentencing decision, Grimm's sixth assignment of error is overruled.

{¶ 46} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.

PIPER, J., concurs separately.

**PIPER, J., concurring separately.**

{¶ 47} I concur with the opinion of my colleagues yet write separately because Grimm apparently labors under the misconception that statements in medical records which identify a perpetrator are automatically inadmissible and not subject to the exception created by Evid.R. 803(4). To the contrary, we have previously noted that medical records that contain the identity of the offender can be pertinent to treatment. *State v. Evans*, 12th Dist. Butler No. CA86-09-130, 1987 Ohio App. LEXIS 6579 (Apr. 27, 1987). Statements given that are reasonably pertinent to obtaining medical treatment including "the inception, or general character of the cause or external source" are not hearsay. Evid.R. 803(4).

{¶ 48} The Sixth District Court of Appeals recently considered a case wherein an adult female was sexually assaulted by her child's father. *State v. Holmes*, 6th Dist. Lucas No. L-17-1111, 2019-Ohio-896. In describing the events to medical professionals at the hospital, the victim included statements pertaining to where, how, and who assaulted her. The court stated, "we have previously found that a description of the injuring event and identification of the perpetrator fall within the medical diagnosis or treatment hearsay exception." *Id.* at ¶ 77.

{¶ 49} The *Holmes* court made reference to *State v. Stahl*, 9th Dist. Summit No. 22261, 2005-Ohio-1137. In *Stahl*, the rape victim provided a statement to hospital nurses facilitating the medical exam toward assuring an appropriate course of physical, mental, and emotional treatment. The victim's statement included a description of the event and identity of the perpetrator. The court stated:

> statements made for purpose of medical diagnosis or treatment are hearsay by definition, but are generally admissible under a particular exception. Evid.R. 801; 802; 803(4). Furthermore, under these rules, this Court has consistently held that a description of the encounter and even identification of the perpetrator are within the exception, as statements made for purposes of diagnosis or treatment. * * * Therefore, we must

reject any contention by Mr. Stahl that the statements describing the assault and identifying him as the perpetrator serve to render those statements beyond the conceivable scope of medical treatment and diagnosis.

*Id.* at ¶ 15. Even where defense counsel argued there was a motive to fabricate the allegations against the identified offender, the finder of fact can evaluate the credibility of statements given in medical records. *State v. Diaz*, 8th Dist. Cuyahoga No. 103878, 2016-Ohio-5523 (admission into evidence of statements identifying the defendant as the perpetrator of abuse violated neither Evid.R. 803[4] nor the confrontation clause).

**{¶ 50}** Courts have recognized "that sexual abuse involves more than physical injury, the physician must be attentive to treating the victim's emotional and physical injuries, the exact nature and extent of which often depend on the identity of the abuser." *United States v. Nez*, 9th Cir. No. 14-10104, * 378, 2016 U.S. App. LEXIS 14629 (Aug. 9, 2016). Domestic violence situations can also involve psychological trauma requiring the need for treatment. Victims are sometimes suicidal, emotionally devastated, and sometimes wrongfully blame themselves, only to place themselves in the hands of abusers again and again. The treatment offered by physicians extends to psychological needs.

**{¶ 51}** Children should never be placed back in the hands of a family member who is an abuser. *State v. Miller*, 43 Ohio App.3d 44 (9th Dist.1988). Thus, so too, it is accurate to say that statements in medical records identifying an abuser are not always unreasonable or impertinent to the treatment for physical and psychological abuse in domestic violence cases.[3]

---

3. *See Crawford and Beyond: Exploring the Future of the Confrontation Clause in Light of Its Past: Remember the Ladies and the Children Too: Crawford's Impact on Domestic Violence and Child Abuse Cases*, 71 Brooklyn L. Rev. 311.